JAMES L. QUINN, Plaintiff-Appellant, *v.* L. B. C., INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-1660

Opinion filed March 20, 1981.

Joseph Cerveny, of Pfeffer, Becker, Gabric & Cerveny, Ltd., of Chicago (Joseph Cerveny and Dario A. Garibaldi, of counsel), for appellant.

Jerome H. Torshen, Ltd., Garretson & Santora, and Meloche, Kapov & Ramano, all of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, an inspector for the city of Chicago Building Department, filed a two-count complaint seeking damages for injuries sustained when he fell at a construction site. The complaint alleged that defendants were guilty of violations of the Illinois Structural Work Act (Ill. Rev. Stat. 1973, ch . 48, par. 60 *et seq.*) (the Act) and common law negligence. Defendants' motion for summary judgment on count I of the complaint dealing with the Act was granted, but the trial court denied the motion as to count II, the negligence count. Plaintiff appeals from the order denying him relief under count I, and defendants cross-appeal from the trial court's finding that plaintiff was a person the Act intended to protect. The issues are as follows: (1) whether plaintiff was within the class of persons protected by the Act; and (2) whether the area upon which plaintiff slipped and fell was a "scaffold" under the Act.

In January of 1974, a high-rise apartment building was under construction in Chicago and was about 65% completed. The "form work" of the proposed 35-story structure reached a height of about 29 floors. Two different hoists or lifting towers were employed to aid the construction process, one a material hoist and the other a personnel hoist.

At about 3 a.m. on January 5, 1974, a fire broke out in the building affecting the top four of five floors which damaged the top three sections of the personnel hoist, making it inoperable. Plaintiff, a "structural iron man," and a co-employee, John McNabola, a specialist in tower cranes and hoisting equipment, arrived during the clean-up operations which took place on January 7, 1974. They were going to evaluate the structural damage caused by the fire to the elevator shafts, cat-heads (supports to the elevator), and the reinforcing steel, and to inspect the personnel hoist. They entered the ground floor at the building which was an enclosed 30' x 30' concrete area and was complete except for the quarry tile necessary for finishing. The floor was covered with debris, mud, patches of ice, plumbing supplies and timber. Plaintiff and McNabola proceeded toward the stairway. After McNabola ascended the stairs and reached the first landing, he noticed that plaintiff was not behind him. He then returned to the ground level where plaintiff told him that he slipped and fell to the ground after stepping on something while walking to the stairway, and that he had hit himself on a reinforced steel column. There were no eyewitnesses to this occurrence, as no construction was being undertaken on the ground floor at this time.

OPINION

We first examine the question of whether plaintiff, a city building inspector, was a person the Act intended to protect.

■■ At the onset, we note that the title of the Act declares that it was

enacted for "the protection and safety of persons *in and about* the construction, repairing, alteration or removal of buildings, bridges, viaducts and other structures * * *." (Emphasis added.) (1907 Ill. Laws 312.) The Act is to be liberally construed in order to carry out its clear legislative purpose. (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817.) Consistent with this purpose, coverage under the Act has been extended to nonemployees involved in the construction process. (*Bennett v. Musgrave* (1970), 130 Ill. App. 2d 891, 266 N.E.2d 128.) In *Bennett*, plaintiff, a nonemployee, was requested by defendant, the owner of the property upon which a building was being erected to check the progress of his employees' work on the building. Plaintiff, while on the premises for that purpose, was injured when a wrench fell from a scaffold and struck him. While the court was primarily concerned with whether the wrench was to be considered "material" as specified under section 1 of the Act (see Ill. Rev. Stat. 1973, ch. 48, par. 60), plaintiff's complaint was found to have stated a cause of action.

More recently, a court from this district denied recovery under the Act to a nonemployee. (*Wright v. Synergistics, Inc.* (1977), 52 Ill. App. 3d 233, 367 N.E.2d 466.) There, plaintiff was injured when she fell off an arrangement of scaffolds and planks while exiting the rear door of a school where she was employed as a cafeteria worker. The court held that plaintiff was not protected under the Act since her occupation concerned the preparation of lunches and was unrelated to the construction activities undertaken at that time on the building. The ruling in *Bennett* was found distinguishable, because in that case plaintiff "was both concerned with the building of a structure and playing a role in the construction project." 52 Ill. App. 3d 233, 236, 367 N.E.2d 466, 468.

■■ We find *Bennett* applicable to the present case. Plaintiff, in his role as an inspector, played a vital part in the construction process. He entered the site for the purpose of evaluating the fire's effect on the building's structural integrity. Performance of this task necessitated his presence within and upon the building. Although he was not requested by defendants to examine the structure, his participation was essential for the safety of both the workmen and pedestrians in the area. Plaintiff's occupation was dangerous in that it involved working in and about partially completed and sometimes fire-gutted buildings. A liberal interpretation of the Act consistent with *Bennett* requires that plaintiff be included within the class of persons the Act intended to protect.

■■ However, to sustain a claim under the Act, an injured party must also prove that defendants have violated one of its provisions (*Burgh v. Crane Construction Co.* (1968), 102 Ill. App. 2d 188, 243 N.E.2d 590.) It is only when an injury has some connection with the hazardous nature of one of the devices named in the Act that a cause of action can be maintained.

(*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607.)
This brings us to the second question: whether the ground floor of the
building upon which plaintiff was walking at the time of his injury
constitutes one of the "devices" under the Act.

Section 1 of the Act provides as follows:

> "[A]ll *scaffolds, hoists, cranes, stays, ladders, supports, or other
> mechanical contrivances*, erected or constructed by any person,
> firm or corporation in this State for the use in the erection,
> repairing, alteration, removal or painting of any house, building,
> bridge, viaduct, or other structure, shall be so erected and con-
> structed, in a safe, suitable and proper manner, and shall be so
> erected and constructed, placed and operated as to give proper
> and adequate protection to the life and limb of any person or
> persons employed or engaged thereon, or passing under or by the
> same, and in such manner as to prevent the falling of any material
> that may be used or deposited thereon." (Emphasis added.) (Ill.
> Rev. Stat. 1973, ch. 48, par. 60.)

Plaintiff contends that the ground floor in this case was utilized as a
working platform and was thus rendered a "scaffold" or "support" within
the language of section 1. This platform, he asserts, failed to provide
"proper and adequate protection to the life and limb of any person
employed or engaged thereon" as required under section 1, and thereby
subjects defendants to liability.

■■■ Undisputedly, a part of a permanent structure may itself constitute
a "scaffold" within the contemplation of the Act. (*Louis v. Barenfanger*
(1968), 39 Ill. 2d 445, 236 N.E.2d 724; *Halberstadt v. Harris Trust &
Savings Bank* (1972), 7 Ill. App. 3d 991, 289 N.E.2d 90.) In making this
determination, our inquiry is not limited to the identity of the object
claimed to be a support or scaffold, but rather how it was being utilized at
the time of the injury. (*Kenworthy v. Young* (1979), 70 Ill. App. 3d 144,
388 N.E.2d 217.) Our supreme court has considered whether flooring of a
building under construction is a device within the ambit of section 1 of the
Act on two occasions. *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d
363, 325 N.E.2d 607; *Juliano v. Oravec* (1973), 53 Ill. 2d 566, 293 N.E.2d
897.

In *Juliano*, plaintiff, an apprentice plumber was assisting others in
installing pipes in a second floor bathroom of a home under construction.
While walking across unfinished subflooring then being used as a working
platform, plaintiff's foot slipped through it, causing him to fall and splash
the molten lead he was carrying on his eye and arm. The court held that
the subflooring was a "stay" or "support" under the Act since the
tradesmen relied upon it as their sole source of support while working.

*Juliano* was found inapplicable to the situation presented in *Tenen-*

*baum,* decided two years later. In *Tenenbaum,* plaintiff was involved with work in an underground water treatment plant being constructed for the city. The area where plaintiff was injured contained three levels. The roof of the structure was at ground level; 17 feet below the roof was a floor called the intermediate level, and about the same distance below that level was the basement level. Plaintiff was inspecting a cleanup operation in a room at the intermediate level at the time of his injury. He was carrying a flashlight since the temporary lights in the room had malfunctioned. While walking through this area, something struck his arm and he dropped the flashlight. Groping in the darkness to retrieve it, he tripped and fell into an unbarricaded chamber and plunged 17' to the basement level below. Plaintiff argued that the intermediate floor area adjacent to the opening into which he fell was being used as a scaffold or platform within the meaning of the Act. The court rejected this contention, finding that the floor was not being used in any manner as a working platform for the purpose of completing construction. It was a completed floor, and plaintiff's employer had simply been preparing pedestals on it upon which to mount machinery.

In addition, the court found *Juliano* distinguishable, noting that its earlier holding had been carefully limited with a statement that another section of the Act also relied upon by plaintiff furnished an adequate basis to affirm the jury's verdict in his favor and that the application of section 1 of the Act to the facts of the case was unnecessary. 53 Ill. 2d 566, 572.

■■ In the present case, as in *Tenenbaum,* the ground floor of the building was not being used as a scaffold or working platform at the time of plaintiff's injury. Although it was uncompleted, the surface only lacked tiling and was being used as a means of ingress and egress as well as storage space. On the day of the occurrence, no construction was in progress on the ground floor. Plaintiff did not rely on the floor as a support while working on the building; he merely utilized it as a path to reach the stairway and other parts of the structure. Simply stated, the floor was being used as a floor, the purpose for which it was designed. Therefore, the floor fell outside the ambit of section 1, and the trial court was correct in ruling that no violation of the Act had occurred.

Plaintiff also argues that defendants' failure to provide a hoist or other mechanical contrivance under section 1 to enable him to safely reach the upper floors of the building constitutes a violation of the Act proximately causing his injuries.

We have held that plaintiff cannot recover under the Act since he was not using the floor of the building as a scaffold at the time of his injury. Because the Act has no application to these facts, we need not decide whether defendants' failure to provide plaintiff with an alternate means

of reaching the area he was to inspect was the proximate cause of his injuries.

For the reasons stated, we affirm the order of the circuit court granting defendants' motion for summary judgment as to count I of plaintiff's complaint. Defendants' request to modify the trial court's finding that plaintiff was a person the Act intended to protect is denied.

Affirmed.

MEJDA and WILSON, JJ., concur.