No. 96-053

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JOHN WILSON,

      Plaintiff and Appellant,

  v.

ROBERT VUKASIN,

      Defendant, Respondent
        and Cross-Appellant.

FILED

AUG 27 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Twelfth Judicial District,
              In and for the County of Hill,
              The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Michael W. Cotter; Cotter & Cotter,
          Great Falls, Montana

      For Respondent:

          Brian Lilletvedt, Keith A. Maristuen;
          Bosch, Kuhr, Dugdale, Martin & Kaze
          Havre, Montana

Submitted on Briefs:  June 20, 1996

Decided: August 27, 1996

Filed:

_____
      Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

John Wilson (Wilson) appeals, and Robert Vukasin (Vukasin) cross-appeals from the Findings of Fact and Conclusions of Law of the Twelfth Judicial District Court, Hill County, concluding that the Montana Scaffolding Act § 50-77-101 to -107, MCA (1991), is not applicable to the facts of this case. We reverse the District Court's conclusion that the Montana Scaffolding Act does not apply and, therefore, do not consider the cross-appeal.

Wilson raises the following issue on appeal:

Did the District Court err in concluding that the Montana Scaffolding Act did not apply to the facts of this case?

On September 2, 1992, Wilson, an independent insurance adjustor, went to Vukasin's residence to inspect the premises for hail damage. Vukasin's ladder was used to gain access to the roof of the garage. Both men climbed onto the roof and Wilson performed his inspection. After the inspection was completed, Wilson began descending the ladder while Vukasin remained on the roof. While Wilson was climbing down the ladder, it "walked" out from under him and he fell to the concrete slab below injuring his right heel.

In its Findings of Fact and Conclusions of Law, the District Court determined that the ladder was placed at too small of an angle and that the ladder was generally inadequate for the task. The court noted that the ladder's base was too narrow, that its legs were rounded where they met the concrete slab, and that it was "old, weathered and flexed too much, allowing it to slip more easily."

2

The District Court concluded that the Montana Scaffolding Act (the Act) did not apply because the ladder was not a scaffold nor was the ladder used as a working place. Because the court concluded that the Act did not apply, the court invoked the doctrine of comparative negligence. The court reduced Wilson's damage award by 50 percent because it found that he had failed to use ordinary care in selecting and using the ladder.

On appeal, Wilson argues that the District Court erred in failing to apply the Act. According to Wilson, had the District Court properly applied the Act, the comparative negligence statute, § 27-1-702, MCA, would not have been applicable because once it is shown that a violation of the Act was the proximate cause of the injury, liability becomes fixed. Steiner v. Department of Highways (1994), 269 Mont. 270, 278, 887 P.2d 1228, 1233.

The District Court recognized that the question of whether the ladder was a scaffold was a "close call" and ultimately concluded that it was not a scaffold. We review the District Court's conclusion of law--that the Act did not apply--to determine whether the court's interpretation of the law was correct. Stratemeyer v. Lincoln County (Mont. 1996), 915 P.2d 175, 177, 53 St.Rep. 245, 246 (citing Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686); Loney v. Milodragovich, Dale & Dye, P.C. (1995), 273 Mont. 506, 510, 905 P.2d 158, 160.

Wilson's fall occurred in 1992. We have previously determined that the 1995 amendments to the Act cannot be applied retroactively. Porter v. Galarneau (Mont. 1996), 911 P.2d 1143,

3

1150, 53 St.Rep. 99, 103. Thus, we must apply the version of the Act applicable at the time of the accident. As of 1992, § 50-77-101, MCA (1991), provided that:

> All scaffolds erected in this state for use in the erection, repair, alteration, or removal of buildings shall be well and safely supported, of sufficient width, and properly secured so as to ensure the safety of persons working on them or passing under them or by them and to prevent them from falling or to prevent any material that may be used, placed, or deposited on them from falling.

We have defined "scaffolding" to include "any device utilized by workmen to allow them to work where a fall might result in serious injury." Porter, 911 P.2d at 1147 (citing Steiner, 887 P.2d at 1233). This Court has previously held that, under the pre-1995 version of the Act, a ladder is considered a scaffold. Porter, 911 P.2d at 1147 (citing Mydlarz v. Palmer/Duncan Constr. Co. (1984), 209 Mont. 325, 338, 682 P.2d 695, 702). Thus, the ladder used by Wilson was a scaffold for purposes of the pre-1995 Act.

Further, this Court has determined that where the Act applies, "the mandatory nature of the statute forecloses the common-law defenses of assumption of the risk, contributory negligence, and negligence of a fellow servant." Steiner, 887 P.2d at 1233 (citation omitted).

The Act provides that all scaffolding "shall be well and safely supported, of sufficient width, and properly secured." Failure to comply with the Act constitutes negligence per se. Steiner, 887 P.2d at 1233. The District Court found that the ladder was too narrow, too flexible, not placed at the proper

4

angle, and not properly secured because of the rounded legs. Thus, the District Court concluded that the inadequacy of the ladder was a proximate cause of Wilson's injuries; however, the court also determined that the Act did not apply. As we held in Steiner, the defense of contributory negligence is not available under the Act. Thus, the District Court erred in applying contributory negligence and in reducing Wilson's damage award pursuant to § 27-1-702, MCA.

In addition, the District Court determined that the ladder was not "used as a working place" and, therefore, that the Act did not apply. Section 50-77-101, MCA (1991), provides that the Act applies where a scaffolding is used in "the erection, repair, alteration, or removal of buildings." Apparently, the court reasoned that, as an insurance adjustor, Wilson was not erecting, repairing, altering or removing a building at the time of his injuries. Wilson argues that the District Court interpreted the Act too narrowly. We agree. At the time of the accident, Wilson was inspecting Vukasin's roof for hail damage. This inspection was integral to the repair of the roof as the cost of the damage had to be determined for Vukasin's insurance claim. Wilson was on the roof to make this determination and facilitate the repair.

In Mydlarz, this Court cited Quinn v. LBC, Inc. (Ill. Ct. App. 1981), 418 N.E.2d 1011, in discussing the purposes of the Act and in deciding that the term "scaffolding" includes a ladder. We find Quinn to be instructive in determining whether Wilson was using the ladder as a "working place." Quinn was an inspector for the City of Chicago Building Department and was injured while inspecting a

5

building following a fire. The Illinois Court of Appeals concluded that Quinn was covered by Illinois' scaffolding act, stating that:

> Plaintiff, in his role as an inspector, played a vital part in the construction process. He entered the site for the purpose of evaluating the fire's effect on the building's structural integrity. Performance of this task necessitated his presence within and upon the building. . . . A liberal interpretation of the Act . . . requires that plaintiff be included within the class of persons the Act is intended to protect.

Quinn, 418 N.E.2d at 1013. Similarly, Wilson utilized the ladder to access the roof to inspect the damage, and ultimately, to facilitate the repair of Vukasin's roof. As the Illinois Court of Appeals recognized in Quinn, an inspector, such as Wilson, is within the ambit of the Act's coverage.

We determine that District Court erred in concluding that the Act did not apply. Accordingly, we hold that the District Court erred by invoking the doctrine of comparative negligence and in reducing Wilson's award by 50 percent. Because the Act applies, it is unnecessary for this Court to consider Vukasin's cross-appeal.

Reversed with direction to enter judgment in Wilson's favor for the full amount of his damages.

_____
Justice

We concur:

_____
Chief Justice

William E Hunter

Troy Trieweiler

_____
Justices

Justice Charles E. Erdmann dissenting.

The majority, in construing the 1991 version of the Scaffold Act as set forth in § 50-77-101, MCA, has determined that the ladder used by Wilson was a scaffold for purposes of this Act. While I agree with that determination, the majority's conclusion that Wilson, as an independent contractor, was within the ambit of the Act's coverage extends the Act beyond any of our previous interpretations.

Wilson is an independent insurance adjuster who contracts with insurance companies to provide claims adjusting services. In this case, Vukasin's insurer, Austin Mutual, contracted with Wilson through Erickson-Baldwin, an independent insurance agency in Havre, to readjust a hail damage claim to Vukasin's property. While inspecting Vukasin's property, Wilson fell from a ladder that had been provided by Vukasin. There was no employment or contractual relationship between Wilson and Vukasin, and Vukasin had no authority to control, direct, or supervise Wilson's performance.

We discussed the language of the Scaffolding Act in State ex rel. Great Falls National Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326. In that case, it was necessary to determine what persons owed the duty that was imposed by the Scaffolding Act because the language employed to describe the duty was expressed in passive voice and failed to specify what persons owed the duty. We held that it was clear the Legislature did not intend to grant multiple remedies or damages to injured workmen by allowing one recovery against the landowner, another against the

8

general contractor, a third against the subcontractor, and so forth. We further held that the Legislature intended only to make injured workmen whole by granting them relief against the person, firm, or corporation having direct and immediate control of the work involving the use of scaffolding.

We specifically overruled our dictum in Pollard v. Todd (1966), 148 Mont. 171, 418 P.2d 869, and Joki v. McBride (1967), 150 Mont. 378, 436 P.2d 78, which suggested that a landowner not in control of the work being completed owed an absolute, nondelegable statutory duty to a scaffold worker or others. Great Falls Nat'l Bank, 154 Mont. at 344. The individual who was injured in Great Falls Nat'l Bank was the employee of an independent contractor who had been hired to complete the project under the contractor's own guidance and supervision. We held that the bank, being simply the owner of the property and not the employer of the injured individual, had no direct control over the work performed and therefore was not liable under the Scaffolding Act.

The direct and immediate control analysis has since been consistently utilized by this Court to determine whether the Scaffolding Act applies. In Mydlarz v. Palmer/Duncan Construction Co. (1984), 209 Mont. 325, 339, 682 P.2d 695, 703, we noted that both defendants were acting as general contractors in control of the work area and, without reaching the question of which party was immediately responsible for failing to provide adequate scaffolding, held that the failure invoked the Scaffolding Act's applicability. This determination of direct and immediate control

9

Wilson was using the ladder as a "working place" to inspect damage on the roof which would ultimately facilitate the repair of the roof, he was therefore within the scope of the Act. The majority however failed to complete the required analysis and determine whether Vukasin was an individual who owed a duty to Wilson under the Act.

Wilson, as an independent contractor, was contracted by Vukasin's insurance agency to readjust the hail damage to Vukasin's property. Vukasin did not contact Wilson personally nor was his presence necessary for this inspection. The "person, firm, or corporation having direct and immediate control of the work involving the use of scaffolding" was either Wilson himself as an independent contractor, or arguably the insurance company. What is clear is that Vukasin had no direct and immediate control of Wilson.

I would therefore hold that the Montana Scaffolding Act does not apply and that the judgment of the District Court finding the plaintiff and the defendant equally at fault under comparative negligence principles should be affirmed.

_____
Justice

Chief Justice Jean A. Turnage and Justice Karla M. Gray join in the foregoing dissenting opinion.

_____
Chief Justice

_____
Justice

11

August 27, 1996

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael W. Cotter
Cotter & Cotter
Box 3425
Great Falls MT 59403-3425

Brian Lilletvedt, Keith A. Maristuen
BOSCH, KUHR, DUGDALE, MARTIN & KAZE
Box 7152
Havre MT 59501-7152

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *D. Gallagher*
Deputy